IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCT LIABILITY LITIGATION (No. VI) | Consolidated Under MDL DOCKET NO. 875 |
| This Document Relates To: | E.D. Pa. Case No. 2:11-cv-66288 |
| LEONARD UNZICKER | Hon. Eduardo C. Robreno |
| v. | Mag. David R. Strawbridge |
| A.W. CHESTERTON CO., et al. | CVLO Group 1.A |

**DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR SANCTIONS**

On the evening of Wednesday, April 18, 2012 — two days before the close of fact discovery — CVLO served unverified, "supplemental" answers to interrogatories in the above-captioned matter. Among other things, plaintiff injected new factual exposure claims into the case; provided for the first time a list of relevant prior testimony, in which he listed depositions taken in approximately 180 other cases; and provided a new list of "co-workers," comprised of twenty-one pages of single-spaced names.

More importantly, the "supplement" proves that many material aspects of plaintiff's sworn, original answers to interrogatories were false. For example, in his original answers, plaintiff denied filing any prior personal injury lawsuits and denied knowing of any prior statements that were relevant to the present lawsuit. In his "supplement," plaintiff disclosed for the first time that (1) he had, in fact, filed a prior lawsuit for asbestos exposure (an asbestosis suit, filed in 1988) and (2) he was deposed in that prior lawsuit. In short, plaintiff's original answers were false at the time plaintiff swore under penalty of perjury that they were true, and plaintiff made no effort to timely correct his false statements while discovery was open.

Plaintiff's conduct is egregious and severe sanctions are warranted. For the following reasons, GE respectfully requests that plaintiff's case be dismissed with prejudice.

## BACKGROUND

Plaintiff, Leonard Unzicker, was a career pipefitter. Mr. Unzicker did not claim that he was exposed to any GE products in his verified answers to interrogatories. *See* Original Answers to Interrogatories (Ex. A) at No. 19. At his deposition, however, he testified that he worked on or around GE controllers and motors.[1] His memory of this work was hazy at best — for example, he could not say "where" or "when" he ever was around these GE products. *See* Unzicker Dep. (Ex. B) at 250:4-10, 246:22-247:9. There is no reason to believe that the controllers or motors had asbestos-containing components, much less that Mr. Unzicker would have been exposed to any such asbestos. *See* GE's Motion for a Protective Order (filed contemporaneously herewith).

This case is part of the CVLO Group 1.A cases, a subset of cases where fact discovery closes on April 20, 2012. *See* D.E. 131 (scheduling order). Until the evening of April 18, GE believed that fact discovery concerning plaintiff's exposure claims was complete: plaintiff had served verified answers to interrogatories and plaintiff had been deposed.

## PLAINTIFF'S SUPPLEMENTAL ANSWERS TO INTERROGATORIES

On the evening of April 18, CVLO served unverified, "supplemental" answers to interrogatories. *See* Exhibit C (April 18 email). Plaintiff's new answers went far beyond supplementing his original answers; rather, in the supplement, plaintiff disclosed for the first time new information that should have been disclosed long ago:

---

[1] Notably, before his deposition, Mr. Unzicker had prepared a handwritten list naming companies whose products he recalled as a source of asbestos exposure. GE was not on this list. *See* Unzicker Dep. Ex. 3 (Ex. D).

2

- ***Plaintiff disclosed, for the first time, his prior asbestos lawsuit.*** In his original answers to interrogatories, plaintiff denied that he had ever filed another lawsuit for personal injury:

> 14.   State whether you have ever filed a lawsuit for personal injury or a claim for social security disability benefits, and if so, state the title, the court or claim number, and the reason for each lawsuit or claim, and the disposition of each lawsuit of claim.
>
> ANSWER:  None other than this lawsuit.

*See* Original Answers to Interrogatories (Ex. A) at No. 14.  Plaintiff provided the same answer in his supplemental answers to interrogatories.  *See* Supplemental Answers to Interrogatories (Ex. C) at No. 14 ("None other than this lawsuit.").

But plaintiff's own supplement belies both his sworn original answer to the interrogatory and his unsworn supplemental answer to the interrogatory:  plaintiff attached to the supplement a deposition transcript from his prior asbestosis lawsuit filed the Central District of Illinois (No. 2:88-cv-2216).[2]  *See* Supplemental Answers to Interrogatories (Ex. C) at end; *see also* Docket Sheet for C.D. Ill. Case No. 2:88-cv-2216, attached as Ex. E[3].  GE was not a party to this prior lawsuit.  The first page of the deposition transcript from the prior lawsuit shows that his attorneys in that action were the Law Offices of Michael P. Cascino, Ltd.

- ***Plaintiff disclosed, for the first time, that he was deposed in his prior asbestos lawsuit.***

Interrogatory No. 29 required plaintiff to "State whether your or your attorneys . . . know of the existence of any statements, signed or unsigned, oral, written, or court reported, from or by any person including any person hereto, which has or claims to have knowledge concerning the

---

[2]  The present lawsuit, for lung cancer injuries, was originally filed in the Southern District of Illinois, Case No. 3:11-cv-224.

[3]  The prior lawsuit, for asbestosis injuries, was transferred to this MDL and bore the Eastern District of Pennsylvania case number 2:10-cv-68439.  A review of the docket for this case shows that it was dismissed on October 6, 2010 for plaintiff's failure to timely file and serve an amended complaint.  *See* E.D. Pa. Case No. 2:10-cv-68439 at D.E. 8.

matter alleged in the complaint." In his sworn, original answers to interrogatories, plaintiff stated that "plaintiff does not know of any." *See* Original Answers to Interrogatories (Ex. A) at No. 29. In his supplemental answers to interrogatories, however, plaintiff revealed that he himself was deposed in his own prior asbestos lawsuit and plaintiff produced a transcript from that lawsuit. *See* Supplemental Answers to Interrogatories (Ex. C) at end.

- ***Plaintiff disclosed, for the first time, a list of "statements" by other individuals.***
Likewise, plaintiff's original answers to interrogatories did not disclose any statements or testimony given by others that were relevant to plaintiff's lawsuit. *See* Original Answers to Interrogatories (Ex. A) at No. 29. In his supplement, plaintiff provided a new Exhibit E to his interrogatory answers. This exhibit, entitled "Prior Testimony in Other Cases," lists approximately 180 prior depositions that are supposedly relevant to plaintiff's claims here. *See* Supplemental Answers to Interrogatories (Ex. C) at No. 19 & Ex. E. All but a handful of these depositions were taken before plaintiff served his sworn, original answers to interrogatories. *Id.*

- ***Plaintiff disclosed, for the first time, hundreds of new co-workers.*** In his original answers to interrogatories, plaintiff stated that he "d[id] not currently recall co-workers at this time." *See* Original Answers to Interrogatories (Ex. A) at No. 20. At his deposition, he could only recall the names of a few co-workers. *See* Unzicker Dep. (Ex. B) at 83:23-84:13, 91:3-5, 100:10-14, 104:3-8; *see also id.* at 121:20-122:8 (explaining that most of his co-workers were "six foot under"). Nevertheless, plaintiff's supplemental answer to this interrogatory included a new, twenty-one page, single-spaced list of "co-workers." *See* Supplemental Answers to Interrogatories (Ex. C) at No. 20 & Ex. D. It appears that plaintiff's counsel has long known of these co-workers: all were listed as being clients of CVLO. *Id.*

- ***Plaintiff disclosed, for the first time, an additional seventeen jobsites.*** Plaintiff's original answers to interrogatories provided a "work history" exhibit where he stated that he worked at ten different jobsites. *See* Original Answers to Interrogatories (Ex. A) at Ex. C. The parties relied on this work history when they took Mr. Unzicker's deposition. *See* Unzicker Dep. (Ex. B) at 266:13-267:3. In his supplemental answers to interrogatories, plaintiff now claims that he worked at twenty-seven different jobsites. *See* Supplemental Answers to Interrogatories (Ex. C) at Ex. C.

- ***Plaintiff, disclosed, for the first time that he worked around a GE land-based steam turbine at the University of Illinois's Abbott Power House.*** In his original answers to interrogatories, plaintiff did not state that he worked on or around a land-based steam turbine at any particular jobsite. *See* Original Answers to Interrogatories (Ex. A) at No. 19. Indeed, the original answers to interrogatories did not disclose that plaintiff worked on or around any GE products at any jobsite. *See id.* Moreover, land-based steam turbines were never discussed at plaintiff's deposition, even though plaintiff's counsel, Mr. Ron Archer, took the lead at the deposition.

Nevertheless, plaintiff's supplemental answer to the same interrogatory now provides a detailed description about his supposed work around a GE land-based steam turbine at the University of Illinois's Abbott Power House: "I worked at Abbott Power House about three separate times, for 4 to 6 week periods each, between 1971 and 1977 and worked within 50 feet of the turbines, on average, 3 to 4 times per week while there. At Abbott Power House, I worked in close proximity to other persons working on turbines and other equipment." *See* Supplemental Answers to Interrogatories (Ex. C) at No. 19. In addition, plaintiff's counsel provided their own additional answer this interrogatory (whatever counsel's own answer to an

5

interrogatory means): "At Abbott Power House and other job sites, Mr. Unzicker worked in close proximity to other persons installing and removing gaskets and insulation on turbines. The turbines at Abbott Power House and other locations were manufactured, erected and serviced by General Electric or Westinghouse." *Id.*

## ARGUMENT

A simple comparison between plaintiff's sworn, original answers to interrogatories and plaintiff's new, supplemental answers to interrogatories demonstrates that plaintiff has failed to disclose substantial material information throughout this lawsuit. Consequently, plaintiff has severely prejudiced GE's defense of this case.

*First*, plaintiff falsely stated in his original, sworn interrogatories that he had not filed any previous asbestos lawsuits. Original Answers to Interrogatories (Ex. A) at No. 14 and verification (last page, stating that the answers were signed "under penalty of perjury"). Plaintiff repeated this false assertion in his unsworn, supplemental answers to interrogatories, Supplemental Answers to Interrogatories (Ex. C) at No. 14, even though the same supplemental answers prove the falsity of plaintiff's claim, *see id.* at end (attaching a transcript from Mr. Unzicker's prior lawsuit). Plaintiff must have known about his prior lawsuit, and thus plaintiff must have known that his sworn answer to this interrogatory was false at the time he made it. In addition, plaintiff's counsel must have known of, or at least should be charged with knowledge of, plaintiff's previous lawsuit because the Law Offices of Michael P. Cascino, Ltd. were plaintiff's counsel in that suit.

Had GE known of this earlier lawsuit, GE would have analyzed the prior pleadings and discovery in that case to shape discovery in this case, and certainly would have used the materials in that case in preparing to cross-examine plaintiff at his deposition in this case. For example, GE would have examined the products identified and the exposure claims in that

6

lawsuit and would have thoroughly cross-examined plaintiff on any inconsistencies between his past deposition testimony and his testimony in this case.[4] It bears mention that GE was not a named defendant in the prior lawsuit (*see* Docket Sheet for C.D. Ill. Case No. 2:88-cv-2216, attached as Ex. E), and that plaintiff did not identify GE as the provider of any asbestos-related materials in his deposition in the prior lawsuit, *see* Supplemental Answers to Interrogatories (Ex. C) at end (see deposition transcript pages 68-69, a list of exposure to brands of products).

*Second*, plaintiff falsely stated in his sworn, original answers to interrogatories that he had not made any prior statements that were relevant to this lawsuit. Original Answers to Interrogatories (Ex. A) at No. 29. Plaintiff's supplemental answers prove that this answer was false because plaintiff produced a transcript of his deposition that was taken in his prior asbestos lawsuit. Supplemental Answers to Interrogatories (Ex. C) at end. Plaintiff must have known about his prior deposition, and thus plaintiff must have known that his sworn answer to this interrogatory was false at the time he made it. In addition, plaintiff's counsel must have known, or at least should be charged with knowledge of, plaintiff's previous deposition because the Law Offices of Michael P. Cascino, Ltd. were plaintiff's counsel and defended that deposition. Had GE known of this prior deposition, it would have used it in preparing for cross-examination at plaintiff's deposition in this case.

*Third*, in his original answers to interrogatories, plaintiff wrongfully failed to disclose prior statements made by others that were relevant to this lawsuit. Original Answers to Interrogatories (Ex. A) at No. 29. In his supplemental answers to interrogatories, plaintiff

---

[4] Indeed, a comparison of the Docket Sheet for the first lawsuit (Ex. E) and the Docket Sheet for the present lawsuit reveals that, of the nineteen defendants named in plaintiff's first lawsuit, only two were named in plaintiff's second lawsuit. Likewise, of the fourteen defendants named in plaintiff's second lawsuit, only two were named in plaintiff's first lawsuit. The stark difference between the defendants named in the two lawsuits is ripe for cross-examination.

disclosed the existence of approximately 180 prior depositions that are supposedly relevant to his claims.  Supplemental Answers to Interrogatories (Ex. C) at No. 29 & Ex. E.  Almost all of these depositions were taken well before plaintiff served his original answers to interrogatories.  Plaintiff has provided no explanation for the timing of his supplemental disclosure — which was served two days before the close of discovery, effectively denying GE of any opportunity to investigate this list of prior testimony.  Plaintiff's last-minute supplementation, however, appears to be a strategic attempt to expand the scope of his exposure claims by expanding plaintiff's witness list and the number of prior depositions that plaintiff may rely upon at trial.

*Fourth*, in his sworn, original answers to interrogatories, plaintiff claimed that he could not recall any co-workers.  *See* Original Answers to Interrogatories (Ex. A) at No. 20.  The truthfulness of plaintiff's original answer to this interrogatory is doubtful:  when defense counsel asked plaintiff to provide names of co-workers at his deposition, plaintiff was able to provide some names.  *See* Unzicker Dep. (Ex. B) at 83:23-84:13, 91:3-5, 100:10-14, 104:3-8.  Plaintiff's recent supplementation, however, calls into question both the truthfulness of plaintiff's original answer to this interrogatory and the truthfulness of plaintiff's deposition testimony:  plaintiff has now provided a twenty-one page, single-spaced list of "co-workers."  *See* Supplemental Answers to Interrogatories (Ex. C) at No. 20 & Ex. D.  Plaintiff's counsel was most certainly aware of these co-workers, as all are listed as being clients of CVLO.  *Id.*

GE has no information concerning these new co-workers, other than the fact that plaintiff now claims that they exist, and it has been effectively deprived of an opportunity to investigate these potential co-workers.  Plaintiff has provided no explanation for the timing of this disclosure, two days before the close of discovery, but it appears to be a strategic attempt to expand the scope of his exposure claims.

*Fifth*, the work history that plaintiff provided in his sworn, original answers to interrogatories was woefully incomplete: plaintiff stated that he worked at ten different jobsites. *See* Original Answers to Interrogatories (Ex. A) at Ex. C. Now, when discovery is essentially complete, plaintiff has claimed to remember working at twenty-seven different jobsites. *See* Supplemental Answers to Interrogatories (Ex. C) at Ex. C. GE has no information concerning plaintiff's exposure claims at these new jobsites. Because the expanded list of jobsites was not produced before plaintiff's deposition, GE was deprived of the opportunity to ask plaintiff questions about his work at these jobsites. Plaintiff's sudden disclosure of these new jobsites appears to be a strategic attempt to expand the scope of his potential testimony at trial.

*Finally*, plaintiff failed to disclose material elements of his work history in his sworn, original answers to interrogatories. *See* Original Answers to Interrogatories (Ex. A) at No. 19. In those answers, plaintiff never stated that he worked around a land-based steam turbine at any location. *Id.* In his supplemental answers, plaintiff offered a new, detailed description of his work around turbines at the University of Illinois's Abbott Power House: "I worked at Abbott Power House about three separate times, for 4 to 6 week periods each, between 1971 and 1977 and worked within 50 feet of the turbines, on average, 3 to 4 times per week while there. At Abbott Power House, I worked in close proximity to other persons working on turbines and other equipment." *See* Supplemental Answers to Interrogatories (Ex. C) at No. 19.

Plaintiff has had numerous chances to identify turbines at the University of Illinois (several of them the size of a bus) at his first deposition in his asbestosis case, his second deposition (the one in this case), in a handwritten list of products he prepared for his second deposition (*see* Unzicker Dep. Ex. 3 (Ex. D)), and in his answers to interrogatories. Now, however, plaintiff "recalls" (two days before the end of discovery) that he worked around these

9

turbines on multiple occasions over the course of six years. At a minimum, it appears that plaintiff is gaming the system.

Had plaintiff provided such turbine exposure information before his deposition, GE would have been cross-examined plaintiff about this claim. Plaintiff's sudden disclosure of this new exposure claim appears to be a strategic attempt to expand the scope of his exposure claims, and an attempt to evade GE's eventual summary judgment motion.

*       *       *

In light of the foregoing, plaintiff's original answers to interrogatories contained material falsehoods that have prejudiced GE's defense. In addition, it appears that plaintiff committed perjury: he swore that his original answers to interrogatories were true and correct, when they were false. (Especially hard to explain away is plaintiff's claim that he had never filed a previous personal injury lawsuit and his failure to disclose the existence of his own deposition in that lawsuit.) Moreover, plaintiff has violated multiple Rules of Civil Procedure, such as Rule 26(e) and 37(c) which require the timely supplementation of discovery responses. Furthermore, plaintiff has violated paragraph 13 of the Court's deposition protocol, which requires that a plaintiff provide "complete" verified answers to standard interrogatories and "complete" fact witness disclosure before the plaintiff's deposition may be noticed.

## RELIEF REQUESTED

A court's power to impose sanctions for discovery abuses is a bedrock legal principle enshrined in the Federal Rules of Civil Procedure and the well-tread case law of this and other federal circuits. Not only has this power been recognized for centuries as inherent to a court's authority, *see United States v. Hudson*, 11 U.S. 32, 34 (1812), *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1119 (1st Cir. 1989) ("Courts cannot lack the power to defend their integrity against

10

unscrupulous marauders; if that were so, it would place at risk the very fundament of the judicial system"), but Rule 37(c) empowers courts to issue "appropriate sanctions" to parties that fail to comply with their discovery obligations, including dismissal of an action.  Sanctions may include, *inter alia*, dismissal of an action, Fed. R. Civ. P. 37(c)(1)(C); 37(b)(2)(A)(v)&(vi), evidentiary sanctions, Fed. R. Civ. P. 37(c)(1), and the imposition of a fine, Fed. R. Civ. P. 37(c)(1)(A).

Plaintiff's actions in this case should not be countenanced, and a severe sanction is warranted.  While the Court ultimately will have to determine the appropriate sanctions, *see Ins. Corp. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (noting that the central requirement of a sanction is that it be "just" and related to the scope of the violation), GE seeks the following relief:

- ***Immediate dismissal with prejudice.***  Dismissal with prejudice is warranted because plaintiff has provided false information about material aspects of his case, and because plaintiff has withheld material information that is central to his claims.  "[W]hen a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that he has forfeited his right to have his claim decided on the merits."  *McMunn v. Memorial Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).

Under Third Circuit law, the propriety of a punitive dismissal should be determined "in light of the factors" set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984).  *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992).  These factors are:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . .; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal . . .; and (6) the meritoriousness of the [case].

11

*Poulis*, 747 F.2d at 868.  Here, each of these factors favor dismissal with prejudice.

*First*, both plaintiff and his counsel are responsible for the submission of false statements in plaintiff's sworn, original answers to interrogatories.  Plaintiff must have known about his prior asbestos lawsuit and his prior deposition.  In addition, the Law Offices of Michael P. Cascino, Ltd. represented plaintiff in his prior lawsuit and at his prior deposition.  Nevertheless, plaintiff swore that he had never filed a lawsuit before.  Plaintiff further swore that he had not made any relevant prior statements.  In short, it appears that plaintiff has committed multiple acts of perjury and that plaintiff's counsel did nothing to prevent this perjury.

Likewise, plaintiff's numerous and substantial "supplementations" to his interrogatory answers — e.g., providing a new list of approximately 180 relevant depositions; providing a new twenty-one page, single-spaced list of co-workers; and providing a new, detailed recollection of work around turbines at the University of Illinois — is indicative of bad faith and dilatoriness.  Indeed, the timing of these new disclosures, two days before the close of discovery, appears designed to prevent defendants from seeking any discovery concerning plaintiff's supplementation.

*Second*, plaintiff's actions have severely prejudiced GE's defense of this case.  For example, had GE known of plaintiff's prior asbestos lawsuit or plaintiff's prior deposition in that lawsuit, GE would have used the pleadings and discovery from that lawsuit to cross-examine plaintiff in this lawsuit.  Likewise, had plaintiff disclosed that he had worked around a turbine at the University of Illinois, GE would have explored this exposure claim at his deposition.  Because fact discovery closes on April 20, 2012, plaintiff has deprived GE of its rightful discovery.

*Third*, the extent of plaintiff's recent supplementation evidences a pattern of dilatoriness. For example, there is no reason why plaintiff could not have provided a twenty-one page, single spaced list of "co-workers" well before the close of discovery. Likewise, there is no reason why plaintiff could not disclose approximately 180 "relevant" depositions at an earlier time. Indeed, plaintiff's recent dump of information appears designed to further delay this lawsuit: it will take a substantial amount of time to weed through the new list of "co-workers" to determine if any of them actually knew Mr. Unzicker or could offer any testimony that is relevant to his claims. Likewise, even if CVLO produced the approximately 180 "relevant" depositions that they have disclosed, it would take an inordinate period of time to analyze these materials for relevance and to determine what additional discovery is required in light of these prior statements.

*Fourth*, plaintiff's conduct almost certainly was willful and in bad faith. It is inconceivable that plaintiff would have forgotten about his past lawsuit or his prior deposition. Likewise, it would be incredible if plaintiff's counsel (who represented plaintiff in his past lawsuit and presumably interviewed plaintiff before filing the present lawsuit) was unaware of this past litigation. In addition, the timing of plaintiff's supplemental answers to interrogatories — served on an evening two days before the close of fact discovery — appears strategic.

*Fifth*, lesser sanctions will not be effective. For example, evidentiary sanctions in this context would have inherent implementation problems. Any such sanction will have boundary issues (e.g., because plaintiff did assert some exposure claims during the normal course of discovery, the parties may dispute what exactly was disclosed before and, thus, what falls inside or outside of an evidentiary sanction). The potential for future motion practice concerning any lesser sanction is enhanced because many evidentiary rulings will be made by a new judge, who lacks familiarity with the present dispute, after this case is remanded for trial. In addition, lesser

sanctions will not adequately punish the sweeping nature of plaintiff's discovery abuses; nor would they adequately deter similar abuses in the future.

*Sixth*, plaintiff's lawsuit against GE is not meritorious. *See* GE's Motion for a Protective Order (filed contemporaneously herewith). In short, the only exposure evidence against GE (apart from the new claims set forth in the supplemental answers to interrogatories) are for controllers and motors. Mr. Unzicker's memory of his work on these products was hazy at best — for example, he could not say where or when he ever was around these GE products. There is no reason to believe that the controllers or motors had asbestos-containing components, much less that Mr. Unzicker would have been exposed to any such asbestos.

***In the alternative, plaintiff's supplemental interrogatories should be stricken and plaintiff should be barred from pursuing any exposure claims against GE that were not expressly set forth in plaintiff's original answers to interrogatories or disclosed during plaintiff's deposition.*** Alternatively, the Court should impose an evidentiary sanction: it should bar plaintiff from asserting any exposure claims other than those that were expressly disclosed in plaintiff's original answers to interrogatories or disclosed during his deposition. The Third Circuit has offered the following balancing test to determine the appropriate exclusionary sanction for discovery violations:

> (1) the prejudice or surprise in fact of the party against whom the excluded [material would have been used], (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule . . . would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness . . . .

*In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977).

*First*, for the reasons stated above, plaintiff's failure to disclose information that should have been provided in his original answers to interrogatories has severely prejudiced GE's defense of this case.

*Second*, GE has no real ability to cure the prejudice caused by plaintiff's substantial new disclosures (including his disclosure of his own prior deposition and his lengthy disclosures of new "co-workers" and "relevant" prior testimony) because discovery closes on April 20, 2012.

*Third*, the Court should not waive Rule 37 sanctions because doing so would only encourage similar conduct in the future. Moreover, the Court has announced its desire to expeditiously resolve CVLO's asbestos cases, as well as all other cases pending in MDL 875. If CVLO was allowed to inject new facts into a case after discovery closed, the Court would have to re-open discovery, which would only prolong the process of resolving these cases.

*Finally*, plaintiff's actions appear to have been in bad faith. *See supra.*

Even if the Court excludes plaintiff's "supplemental" answers interrogatories and limits plaintiff to the items expressly disclosed in his original answers to interrogatories and at his deposition, GE should be given the opportunity to re-depose and cross-examine plaintiff — at CVLO's expense — after plaintiff's counsel has produced all of the materials from plaintiff's prior lawsuit so that GE can, among other things, probe inconsistencies between plaintiff's past and present statements. At any such deposition, plaintiff should be given no opportunity to expand his exposure claims (otherwise, the evidentiary sanction would be lost).

***In the alternative, the case should be removed from CVLO Group 1.A, discovery should be re-opened, and CVLO should be required to pay GE's costs and attorney fees for all additional discovery taken in this case.*** Alternatively, GE is entitled to new discovery to investigate plaintiff's numerous new factual claims. This new discovery would include, among

other things, another deposition of Mr. Unzicker. Before any such deposition would occur, however, plaintiff's counsel should first be required to produce:

- A complete copy of Mr. Unzicker's deposition taken on May 2 and 3, 1989 in the Central District of Illinois case (No. 2:88-cv-2216), and all exhibits thereto.

- A complete copy of Mr. Unzicker's answers to interrogatories, including any supplements thereto, served in the Central District of Illinois case (No. 2:88-cv-2216).

- A complete copy of all documents produced by Mr. Unzicker in the Central District of Illinois case (No. 2:88-cv-2216).

- A complete copy of all co-worker depositions taken in the Central District of Illinois case (No. 2:88-cv-2216), and all exhibits to those depositions.

- A complete copy of all depositions set forth in Exhibit E to plaintiff's supplemental answers to interrogatories, and all exhibits to those depositions. Given that the new Exhibit lists approximately 180 prior "relevant" deposition, plaintiff's counsel should be required to state which depositions actually are relevant to Mr. Unzicker's case and which depositions actually mention Mr. Unzicker by name.

- Plaintiff's counsel should be required to state which co-workers on the twenty-one page, single space list provided in the new Exhibit D actually worked with Mr. Unzicker and actually can offer testimony in support of Mr. Unzicker's claims. GE should be afforded an opportunity to depose these co-workers.

- In addition, in light of the newly disclosed information, it is apparent that some of plaintiff's answers to interrogatories in this case remain deficient. For example, Interrogatory No. 9 asks for information about all medical providers who have ever treated the plaintiff for pulmonary complaints. Plaintiff's attached Exhibit A (a medical provider list), does not appear to list any physicians who saw or treated plaintiff for his claim of asbestosis in the 1980s. Plaintiff should be required to supplement all of his answers to interrogatories and swear under penalty of perjury that all of the answers are complete, true, and correct.

GE's review of any new discovery materials, as well as its re-deposition of Mr. Unzicker, should be at CVLO's expense because, by failing to timely provide GE with material discovery, CVLO has caused GE to waste its past time and effort on this case. Fed. R. Civ. P. 37(c).

## CONCLUSION

Whether plaintiff's false statements and failure to timely disclose material information were intentional, or just the result of gross negligence, plaintiff's "supplemental" answers to

16

interrogatories have significantly changed the complexion of this case. If the case is not dismissed, substantial new discovery will be required. Accordingly, GE respectfully requests that the Court dismiss this case with prejudice or provide an alternative sanction that it deems appropriate.

## CERTIFICATION

Counsel for GE hereby certifies that he has attempted to confer with opposing counsel in a good faith effort to resolve this dispute without court action.

Dated: April 20, 2012                              Respectfully submitted,

                                                   GENERAL ELECTRIC COMPANY


                                                   By:  */s/ John A. Fonstad*
                                                        One of Its Attorneys

                                                        Maja C. Eaton
                                                        John A. Fonstad
                                                        SIDLEY AUSTIN LLP
                                                        One South Dearborn Street
                                                        Chicago, Illinois  60603
                                                        (312) 853-7000
                                                        meaton@sidley.com
                                                        jfonstad@sidley.com

## **CERTIFICATE OF SERVICE**

        I hereby certify that on April 20, 2012, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated:  April 20, 2012

                                               */s/ John A. Fonstad*