IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD UNZICKER | ) | MDL-875 |
| | ) | |
| v. | ) | PA-ED Case No. 11-cv-66288 |
| | ) | |
| A.W. CHESTERSTON COMPANY, et al., | ) | |

**MEMORANDUM**

DAVID R. STRAWBRIDGE, USMJ                                                    MAY 31, 2012


Before the Court, and resolved by our order of May 25, 21012 (Doc. 179), are the "Motion for Sanctions" (Doc. No. 136) ("Sanctions Mot.") and "Motion for Protective Order Concerning Plaintiff's Rule 30(b)(6) Deposition Notice" (Doc. No. 137) ("Mot. Protect.") filed by General Electric Company ("GE"). The motion for protective order has been granted and Plaintiff's April 18, 2012 Fed. R. Civ. P. 30(b)(6) deposition notice has been quashed. However, pursuant to the parties' earlier agreement and our February 17, 2012 order, GE shall produce a turbine witness pursuant to the parties' agreement under the original November 14, 2011 deposition notice. (*See* 01-MD-875, Doc. No. 8453.) Further, the motion for sanctions has been granted, and the unverified "supplemental" interrogatory answers, which are the subject of that motion, have been struck. By this memorandum, we now set out our explanation for the issuance of the May 25, 2012 order.

**I      FACTUAL AND PROCEDURAL HISTORY**

This case is one of approximately 630 cases remaining in MDL-875 in which Cascino Vaughan Law Offices ("CVLO") is acting as plaintiffs' counsel. It was referred to us by Judge Robreno on June 9, 2011. Mr. Unzicker was a career pipe fitter who testified that he worked on or around GE motors and controllers but could not say with particularity when or where he did so. (Mot. Protect., Exh. A, pp. 10-11, 14.) He alleges that exposure to GE and other asbestos containing

products caused his lung cancer and non-malignant asbestos disease.  (Sanctions Mot., Exh. A.,

Answer 3.)   During discovery, he provided verified answers to GE's interrogatories (signed on

September 14, 2011.) (Sanctions Mot., Exh. A.)  He sat for deposition on October 4, 2011. (*Id.*, Exh.

B.)  In this discovery, he stated that he had never filed a lawsuit other than the current one and denied

knowledge of any statements which were relevant to this current lawsuit.[1]  (*Id.*, Exh. A, Answers 14

& 29.)  He failed to identify any co-workers in his answers (*Id.*, Answer 20), and identified fewer than

ten by name at his deposition.[2]  (*Id.*, Exh. B., pp. 7-11.)  He also disclosed ten relevant jobsites in his

verified interrogatories.  (*Id.*, Exh. A, Answers 17 & 18.)[3]

On November 14, 2011, CVLO noticed the deposition of a "turbine witness" to discuss GE's

land-based steam turbines at the relevant jobsites pursuant to Fed. R. Civ. P. 30(b)(6.) (Mot. Protect.

Ex I.)  GE objected to the notice claiming, *inter alia*, that the topics in the notice were overly broad

and that there was no evidence that Mr. Unzicker had ever worked around any GE products.  (*Id.,*

---

[1] Interrogatory 14 provides:  "[s]tate whether you have ever filed a lawsuit for personal injury or a claim for social security disability benefits" and Interrogatory 29  provides "[s]tate whether you . . . know of the existence of any statements . . . from or by any person . . .  which has or claims to have knowledge concerning the matter alleged in the complaint, or who was or claims to have been a witness to any part of the exposure alleged by you." (Sanctions Mot., Exh. A, Questions 14 & 29.)  Plaintiff objected to Interrogatory 29, citing work product and attorney-client privilege, but then stated that "[s]ubject to, and without waiving, the objection, Plaintiff does not know of any." (*Id.* Question 29.)

[2] Interrogatory 20 provides:  "[f]or each product identified in Interrogatory 19 [relating to products to which Mr. Unzicker alleged exposure] identify . . . your coworkers, including persons who worked with you or at the same job site, with knowledge that the product was on the particular job site" or "with knowledge that you actually worked with the particular product." (Sanctions Mot., Exh. A, Question 20.)

[3] Interrogatory 17 requests a list of "each and every job site at which you claim to have worked with or around asbestos-containing products." (Sanctions Mot., Exh. A Question 17.) Interrogatory 18 requests the location of those jobs, the length of time worked at the job, and the names and addresses of superiors and co-workers. (*Id.*, Exh. A, Question 18.)

Exh. J.) CVLO then filed a motion to compel. (01-MDL-875 Doc. No. 8435.) We denied the motion

after being advised by the parties that they had reached a compromise and agreed to proceed with the

deposition. (01-MD-875, Doc. No. 8453.) The deposition was scheduled for April 10, 2012. (*Id.*)

On March 22, 2012, for reasons that are not clear to us, CVLO tendered a revised Rule 30(b)(6)

notice, which greatly expanded the scope of the original notice. (Mot. Protect., Exh. M.) GE again

objected based, *inter alia*, on its scope, lack of particularity, and lack of relevance to Mr. Unzicker's

case. (*Id.*, Exh. N.) GE did not, however, cancel the April 10, 2012 deposition. Regrettably, that

deposition did not go forward on April 10, 2012 as Mr. McCoy, CVLO counsel, was late in arriving

and GE, after a failed attempt to reach him by telephone, left the deposition site. After the court

intervened, the parties rescheduled the deposition for April 25, 2012, agreeing that it could be

completed after the April 20, 2012 close of fact discovery.

On April 18, 2012,[4] two days before the close of discovery, CVLO served upon GE unverified

"supplemental" answers to GE's interrogatories. (Sanctions Mot., Exh. C1, p. 14.)[5] These unverified

answers, for the first time, identified, *inter alia*: (1) a list of approximately 180 deposition transcripts

allegedly containing statements relevant to Mr. Unzicker's case[6]; (2) the names and addresses of over

800 new co-worker witnesses[7]; and (3) 17 new jobsites where Mr. Unzicker claims that he may have

---

[4] The answers are dated April 13, 2012, but were transmitted by email to defense counsel on April 18. (Exh. C1, p. 2.)

[5] These unverified answers merely provided: "Client Verification to Follow." (Sanctions Mot., Exh. C1, p. 14.) CVLO has not provided us with any indication that these answers were subsequently verified.

[6] (Sanctions Mot., Exh. C1, Question & Supp. Answer 29.)

[7] (Sanctions Mot., Ex C1, Question & Supp. Answer 20.)

been exposed to asbestos containing GE products.[8]  (*See* Sanctions Mot., Exh. C1.)  Further, while

the "supplemental" answers, like the original verified answers, provided that Mr. Unzicker had not

filed any other lawsuit other than the current suit. (Sanctions Mot., Exh. C1, Answer 14.) A transcript

of Mr. Unzicker's deposition from his 1988 lawsuit was attached to the "supplemental" answers.

(Sanctions Mot., Exh. C3.)

On April 18, 2012, CVLO also served upon GE a new Rule 30(b)(6) deposition notice  for

the April 25, 2012 deposition.  (Mot. Protect., Exh. C.)  It was materially identical to the March 22,

2012 notice.  (*Id.  See also* Exh. M.) It is this notice that is the subject of this motion for protective

order.  After GE received the unverified "supplemental" interrogatory answers, it objected to the

notice, withdrew its agreement to proffer a Rule 30(b)(6) turbine witness (*Id.*, Exh. O.) and, on April

20, 2012, filed the current motions for sanctions and a protective order.  (Sanctions Mot., Mot.

Protect.)  Mr. Unzicker filed his combined response to both motions on April 30, 2012 (Doc. No.

143), and GE filed its reply on May 3, 2012.  (Doc. No. 149.)

## II.     DISCUSSION

### A.     The Sanctions Motion

In response to GE's Motion, CVLO argues that the service of Mr. Unzicker's expanded and

unverified "supplemental" interrogatory answers two days before the end of discovery was timely

under Fed. R. Civ. P. 26(e) given that it was served before the end of discovery.[9]   While

---

[8] In his verified answers, Mr. Unzicker alleged only ten jobsites. (Sanctions Mot., Exh.
A.)  This number was raised to 27 jobsites in the unverified "supplemental" answers. (Sanctions
Mot., Ex. C1, Question & Supp. Answer 17.)

[9] CVLO cites a one page opinion from the U.S. District Court of Oregon in which the
court allowed supplemental interrogatory answers five months after the original answers were

(continued...)

4

acknowledging  the importance of keeping to the discovery deadlines in advancing this argument,

CVLO fails to acknowledge that the supplemental answers it served were *unverified*, contrary to the

clear requirement of Fed. R. Civ. P. 33(b)(3) which states that "[e]ach interrogatory *must . . .* be

answered . . . fully in writing *under oath.*"   Fed. R. Civ. P. 33(b)(3) (emphasis added.)   This

fundamental proposition is embodied in the August 4, 2011 Deposition Protocol which had been

rigorously negotiated by the parties and ordered by the court to apply to all CVLO MDL-875 cases.

(08-90330, Doc. No. 87, Exh. A.)[10]   It is for this reason that we struck these unverified

"supplemental" interrogatory answers.[11]

    In *Bracey v. Grenoble*, 494 F.2d 566 (3rd Cir. 1974), the district court concluded, after a non-

jury trial, that the defendant, Major Grenoble, was liable for the beating of the prison inmate plaintiff

given that he was in charge of the prison guards who where involved in the actual assault. *Id.* at 569.

The Third Circuit reversed the district court's decision finding that the plaintiff had failed to establish

that Grenoble had actual knowledge of and acquiesced in the unlawful acts of his subordinates. *Id.* at

---

[9](...continued)
served.  *Combined Ins. Co. of America v. Hansen*,  130 F.R.D. 447, 448 (D. Or., 1990.)  The fact
that this is the most persuasive case counsel could find shows the weakness of CVLO's
argument.  This case is clearly distinguishable since the court specifically noted that fact
discovery was on-going.  *Id.*

    [10] In footnote four of the protocol, we concluded that "defense counsel is entitled to
verified answers to interrogatories and fact witness disclosures prior to the issuance of a notice of
deposition."  We explained that we did not anticipate that this would "be unduly burdensome
considering that, under Judge Reed's Order of November 15, 2010, verified answers were to
have been [served] no later than February 21, 2011."

    [11] While the unverified supplemental answers have been struck, Mr. Unzicker is permitted
to raise any claims that were set forth in his original verified answers to interrogatories or
disclosed during his deposition.  Further, our ruling today is not meant to affect the manner in
which the parties may utilize Mr. Unzicker's 1988 deposition transcript attached to the unverified
answers. (*See* Sanctions Mot., Exh. C3 & C4.)

570-72.  While we recognize that this case arises out of a factual scenario quite distinct from our case,

its secondary holding is of significance here.  Citing Fed. R. Civ. P. 33(a), the predecessor to Rule

33(b)(3), the Third Circuit held, as an independently sufficient basis for its ruling, that the district

court improperly relied upon Grenoble's unverified interrogatory responses.  *Id.* at 570, n.7.  *See also*

*U.S. v. $39,557.00, More or Less, in U.S. Currency*,  683 F. Supp.2d 335, 340-341 (D.N.J. 2010)

(concluding that a party's lack of compliance with Rule 33(b)(3) by, *inter alia*, failing to sign

interrogatory answers, was sufficient grounds to strike its claim); *Villareal v. El Chile, Inc.*, 266

F.R.D. 207, 211 (N.D. Ill. 2010) (acknowledging that "[r]equiring a party to sign interrogatory

responses under oath serves the critical purpose of ensuring that the responding party attests to the

truth of the responses"); *Tokarz v. TRG Columbus Development Venture, Ltd.*, 08-60190,  2008 WL

4533917, at *2 (S.D. Fla. Oct. 6, 2008) (holding that by failing to sign interrogatory answers, the party

was "deemed to have not responded at all" ); *Overton v. City of Harvey*, 29 F. Supp.2d 894, 901 (N.D.

Ill. 1998) (striking as a summary judgment exhibit plaintiff's unverified answers to interrogatories

signed only by the attorney); *Cabales v. U.S.*, 51 F.R.D. 498, 499 (S.D.N.Y. 1970) (finding that

unsigned, unverified interrogatory answers did not qualify as answers at all.)[12]  Mr. Unzicker has not

satisfied us that we should deviate from the protocol or this clear authority.

    Having rested our determination of this motion upon Plaintiff's failure to comply with Fed.

R. Civ. P. 33(b)(3), we choose to take the opportunity to address the question of prejudice raised by

---

[12] Judge Robreno, in this MDL, has ruled in a similar manner.  *Silver v. Foster Wheeler LLC*,  11-64218, 2012 WL 975876, at *1, n.1 (E.D. Pa. Jan. 25, 2012) (reiterating a prior holding that "an unsworn declaration cannot be relied upon to defeat a motion for summary judgment"); *Deuber v. Asbestos Corp. Ltd.*,  10-78931, 2011 WL 6415339, at *1, n.1 (E.D. Pa., Dec. 2, 2011) (citing *Fowle v. C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) and granting summary judgment after finding that an unsworn expert report could not be relied upon to defeat summary judgment.)

GE.  Fed. R. Civ. P. 37(c) provides that a party who, *inter alia*, fails to timely supplement an earlier response "is not allowed to use that information or witness to supply evidence . . . unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1.)  CVLO claims that their supplementation was timely simply because it was served before the end of discovery.  Under the circumstances of this supplementation, we disagree.

This case was originally filed in the U.S. District Court for the Southern District of Illinois on March 21, 2011 (3:11-cv-00224, Doc. No. 13 (S.D. Il.).) ("Complaint").  By this filing, counsel has certified to the court, pursuant to Fed. R. Civ. P. 11(b)(3), that "to the best of the [Plaintiff's] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*." (emphasis added.)  The Rule then requires the plaintiff and/or his counsel to have sufficiently investigated the supporting facts relating to his claim and to certify "after an inquiry reasonable under the circumstances" that those facts provide evidentiary support for the claim or if "specifically so identified" that the factual contentions will have support "after the reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3).

A review of Plaintiff's Complaint provides in its "General Allegations" that Mr. Unzicker worked "as a pipe fitter at various job sites" and "was exposed to asbestos dust or fibers emanating from the asbestos products and/or asbestos insulated equipment which was sold, manufactured, mined, distributed, packaged, installed or otherwise placed into commerce by defendants [including GE]."  (*See* Complaint, p. 2, ¶6.)

The Complaint fails to identify, however, any specific GE products around which he worked and only makes broad, general reference to locations where he worked and times when he may have worked at those locations.   These shortcomings raise significant questions about whether Mr. Unzicker has the evidentiary support necessary to show a causal relationship between GE products and his disease condition.  It was under this circumstance that CVLO served upon defendants the extensive supplemental discovery just two days before the close of discovery.

The Third Circuit has identified four factors that we must consider as we evaluate whether to exclude evidence such as the untimely "supplemental" interrogatory answers:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*In re TMI Litigation*, 193 F.3d 613, 721 (3d Cir. 1999) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n.*, 559 F.2d 894, 904-05 (3d Cir. 1977).)

It would be difficult to imagine a circumstance where an untimely, non-specific information dump could be more prejudicial to defendants or more disruptive to the case management process than what has occurred here.  Clearly, GE could not be expected to undertake any form of sensible due diligence with respect to the disclosure of some 800 alleged coworker witnesses, divulged two days before the end of discovery, who might have information pertaining to the question of Mr. Unzicker's exposure.  Similarly, GE could not reasonably be expected to undertake any due diligence with respect to alleged exposures at 17 additional job sites where Mr. Unzicker may have been exposed that are mentioned for the first time in the unverified "supplemental" interrogatory response.

Likewise, sorting through 180 deposition transcripts, in two days, cannot be considered compatible with any kind of sensible approach to dealing with discovery in this case.

Finally, we note that CVLO, or its predecessor, the Law Offices of Michael P. Cascino, Ltd., acted as Unzicker's counsel in what we understand to be an earlier 1988 asbestos case.  Certainly it would be expected that CVLO, not to mention its client, would have had knowledge of, or at least some record of, the 1988 deposition transcript from that case which was among the materials disclosed two days before the end of discovery.

Upon balancing the four factors, it is clear that, even if his "supplemental" interrogatory answers had been verified, Mr. Unzicker would likely have been sanctioned by prohibiting the use of the "supplemental" answers given the prejudice to GE.  CVLO has failed to convince us that its supplement was justified or should be excused.

B.      **The Motion for Protective Order Concerning Plaintiff's Rule 30(b)(6) Deposition Notice**

We now turn to the April 18, 2012, Rule 30(b)(6) deposition notice, which is the notice at issue in GE's motion.  CVLO first noticed the deposition of a turbine witness to discuss GE's land-based steam turbines at ten jobsites on November 14, 2011.  (Mot. Protect., Exh. I.)  GE objected and CVLO filed a motion to compel GE's cooperation, which we denied on February 17, 2012 in light of the parties agreement to depose the witness on April 10, 2012, subject to certain conditions of which the court was not made aware. (01-MD-875, Doc. No. 8453.)[13]  On March 22, 2012, CVLO

---

[13] CVLO's contention that this order somehow negates GE's arguments that the notice is not reasonably particularized is wholly without merit.  This order denied CVLO's motion to compel GE's Rule 30(b)(6) witness due to the parties' compromise and merely set forth the deposition schedule agreed to by counsel.

tendered a revised Rule 30(b)(6) notice, which greatly expanded the scope of the original notice.[14]

GE again objected but did not seek to quash the notice. (Mot. Protect., Exh. J.)  The deposition did

not go forward on that date and the parties rescheduled it for April 25, 2012.  On April 18, 2012,

along with the unverified "supplemental" interrogatory responses, CVLO served on GE a further

notice which was virtually identical to the March 22, 2012 notice. (Sanctions Mot. Exh. C1.)  After

receiving the unverified "supplemental" interrogatory responses, GE filed the two current motions

and refused to provide its Rule 30(b)(6) turbine witness.

The original November 14, 2011 deposition notice is entitled "Notice of 30(b)(6) Deposition

of General Electric Corporation - Turbine Witness - issued 11/14/2011." (Mot. Protect., Exh. I.)  It

lists 24 subjects to be covered at the deposition "with respect to turbines erected or serviced by

deponent" at the listed jobsites for the years "1910  until 1990", including such topics as sales and

customer service account representatives, contracts for erection and documentation of erections,

engineering files and specifications for asbestos materials, service work, material suppliers,

contractors hired for insulation work, the use and removal of asbestos materials, asbestos warnings

and protective measures, and communications with various safety agencies.  (*Id.*.)

The April 18, 2012 deposition notice is entitled "Notice of 30(b)(6) Deposition of GE

Corporation [for] April 25, 2012."  (*Id.,* Exh. C.)  No longer is the notice limited to turbines.  (*Id.*)

Rather, in addition to turbine specific subjects, the notice also lists the broader subjects of covered

or insulated electrical wire and cable, ballast, switching gear, motor winding, and arc shield "products

manufactured or sold by GE from 1950 to 1983", "specifications for materials used in GE electrical

---

[14] CVLO did reduce the number of jobsites to six after determining that no GE turbines were present at the other four sites.

products from 1950 to 1983" and, "asbestos content of GE electrical products from 1950 to 1983."

(*Id.*.)

Regarding the GE products that would be relevant during the Rule 30(b)(6) deposition under the April 18, 2012 deposition notice, Mr. Unzicker testified at his October 4, 2011 deposition that he replaced GE motors and re-wired GE controllers but was unable to say exactly when or where he performed such work. (*Id.*, Exh. A, pp. 9-11, 13-14.)  In his verified answers to GE's interrogatories (Sanctions Mot., Exh. A.) and during his deposition, Mr. Unzicker did not identify any other GE products to which he alleges exposure, including turbines.[15]

As we recently reminded CVLO during a May 14, 2012 recorded telephone conference, Fed. R. Civ. P. 30(b)(6), requires that "[i]n its notice or subpoena, a party may name as a deponent a public or private corporation . . . or other entity and *must describe with reasonable particularity the matters for examination*." Fed. R. Civ. P. 30(b)(6) (emphasis added.)  Even a cursory review of the April 18, 2012 notice demonstrates that it is seriously overbroad, unduly burdensome and fails to set out topics with reasonable particularity.  The notice seeks testimony regarding products Mr. Unzicker never claimed to have worked around including covered or insulated electrical wires and cables, ballasts, switching gear, motor windings, and arc shields.  (Mot. Protect., Exh. C.)  Further, the notice calls for the production of a designee to provide information on electrical products for a thirty year period, regardless of whether they contained asbestos or not.  (*Id.*)  It is clear that the notice is not reasonably

---

[15]  Until the unverified "supplemental" interrogatory responses, Mr. Unzicker did not with any specificity allege that he worked around any GE turbines.  Thus, the previous Rule 30(b)(6) notices seem be unrelated to his allegations.  Similarly, the date span of 1910 to 1990 appears significantly overbroad.  However, since GE and Mr. Unzicker agreed to a compromise and GE agreed to provide a turbine witness for deposition pursuant to that compromise, we will limit our discussion to the electrical products in the deposition notice at issue.

limited to products and time frames relevant to Mr. Unzicker's work history.  *See W.L. Gore & Associates, Inc. v. Tetratec Corp.*, 89–3995, 1989 WL 144178, at \*3-4 (E.D. Pa. Nov. 28, 1989) (finding that plaintiffs' document request regarding "all documents relating to waterproof, breathable fabrics" was overbroad and too vague to be considered reasonably particular, regardless of whether the defendant knew the meaning of those terms); *Constable v. Teledyne Indust.*, S86-654, 1988 WL 492337,  at \*2 (N.D. Ind. May 19, 1988) (concluding that a document request regarding "litigation and/or claim files" was simply too general under Rule 30(b)(6).)

We have concluded that this notice must be quashed.  Not withstanding this order, however, in light of the GE's previous agreement to provide a Rule 30(b)(6) witness on turbines, and our February 17, 2012 order, GE must produce such a witness, per the parties' previous agreement which was based upon the November 14, 2011 Rule 30(b)(6) deposition notice.[16]

---

[16] CVLO, in their response, does not provide any serious opposition to the allegations discussed above.  Their response deals almost exclusively with the argument that they could not have disclosed any earlier than April 18, 2012 in the unverified "supplemental" answers that Mr. Unzicker worked at the Abbott Power Plant, located at the University of Illinois.  CVLO alleges that Mr. Unzicker did not remember that he worked at the power plant until he saw the turbine drawings and files produced by GE in November 2011 and February 2012, respectively.  CVLO does not, however, indicate why they could not have disclosed this epiphany earlier than two days before the end of discovery.  The Abbott Power Plant is not mentioned in any document submitted to the court except in the list of relevant job sites attached as Exhibit C to the unverified "supplemental" interrogatory responses. (Mot. Protect. Exh. C1.)  The University of Illinois, however, is listed as a relevant jobsite in all three Rule 30(b)(6) notices as well as in the verified interrogatory answers.  Moreover, GE agreed to provide a turbine witness to discuss turbines at the listed jobsites, including the University of Illinois.  As a result, we further conclude that since the November 14, 2011 deposition notice and the verified interrogatory answers list the University of Illinois as a relevant jobsite, and because the Abbott Power Plant is located at the University of Illinois, the November 14, 2011 deposition notice encompasses the turbines at the Abbott Power Plant and those turbines may be discussed during the deposition. We are unwilling to re-open discovery on the Abbott Power Plant outside of the Rule 30(b)(6) deposition, however, especially since CVLO already has the turbine drawings and files from that site. We also do not comment upon the impact of any testimony regarding the Abbott Power

(continued...)

**III.     CONCLUSION**

Because Mr. Unzicker failed to verify his supplemental interrogatory answers before the end of discovery, those unverified answers have been struck.  However, even if the supplementary answers had been verified we would have still been likely to strike them for being unduly prejudicial to GE, in light of their expansive nature and their submission to GE two days before the end of discovery.  Therefore,  GE's motion for sanctions has been granted.  Mr. Unzicker's most recent Rule 30(b)(6) deposition notice does not set forth the topics to be discussed with reasonable particularity as is required by the rule and is overbroad since it relates to products about which there is no evidence of exposure to Mr. Unzicker.  Thus, GE's motion for protective order has been granted and the deposition notice has been quashed.  Nonetheless, pursuant to the parties' agreement and our February 17, 2012 order, GE shall produce a turbine witness pursuant to the original November 14, 2011 deposition notice to discuss the relevant jobsites listed in that notice, including the Abbott Power Plant.

An appropriate order was entered on May 25, 2011 (Doc. No. 179.)


BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE

---

[16](...continued)
Plant since the only allegation regarding that specific location within the University of Illinois was in the unverified "supplemental" interrogatory responses, which have been struck.